ALTENBERND, Judge.
Marzuq Al-Hakim challenges a judgment finding him in direct criminal contempt of court. Mr. Al-Hakim attended a court hearing as a member of the public but was put in jail after causing a courtroom disturbance. Because the resulting judgment for direct criminal contempt was not entered in compliance with the requirements of Florida Rule of Criminal Procedure 3.830, we reverse.
On the morning of March 17, 2009, Mr. Al-Hakim was present in court during a hearing on a family member’s criminal case. At some point during the morning docket, an assistant public defender announced that she would not be adopting the pro se motion for recusal which Mr. Al-Hakim’s family member had filed. A courtroom disturbance followed, and the trial judge had Mr. Al-Hakim handcuffed and taken into custody. The court did not immediately hold Mr. Al-Hakim in contempt of court.
Later that day, as part of his afternoon docket, the judge had Mr. Al-Hakim brought back before the court.[1] The judge asked Mr. Al-Hakim to state his name and then announced, “Mr. Al-Hakim, I am go *1173 ing to find you in direct criminal contempt of court for creating a disturbance in my court this morning. Is there anything that you want to say before I sentence you, sir?” Mr. Al-Hakim contested whether he had acted in contempt. The court responded:
Well, for purposes of the record, what you did, sir, was you started yelling at this court. You were pointing your finger, yelling at the court and you disrupted the courtroom this morning while I was conducting cases. That’s why I had you taken into custody, and that’s why I found you in direct criminal contempt of court.
The judge sentenced Mr. Al-Hakim to thirty days in jail and signed a written judgment in open court. The record does not reflect that the court ever inquired of the need to appoint counsel for Mr. Al-Hakim. The written judgment does not recite the facts on which the finding of contempt was based. Several days later, after Mr. Al-Hakim had obtained the assistance of a lawyer, the judge reduced the sentence to time served.
 A trial court has broad, discretionary power to impose a judgment of contempt, a power which existed at common law. See Parisi v. Broward, County, 769 So.2d 359, 363 (Fla.2000); Moorman v. Bentley, 490 So.2d 186, 187 (Fla. 2d DCA 1986). However, a proceeding for criminal contempt, which is punishable by up to twelve months’ imprisonment, is expressly within the scope of the Florida Rules of Criminal Procedure. See Fla. R. Crim. P. 3.010. As a result, a trial court must exercise its contempt power in a manner that is consistent with the Florida Rules of Criminal Procedure. Florida’s appellate courts have regarded the failure to do so as fundamental error. See Hutcheson v. State, 903 So.2d 1060, 1062 (Fla. 5th DCA 2005).
Two provisions of the Florida Rules of Criminal Procedure pertain to this case. First, rule 3.111(b) requires that “[cjounsel shall be provided to indigent persons in all prosecutions for offenses punishable by incarceration.” (Emphasis added.) Applying rule 3.111(b), this district concluded in Woods v. State, 987 So.2d 669, 674 (Fla. 2d DCA 2007), that “the Florida Rules of Criminal Procedure required the availability of appointed counsel for this direct criminal contempt prosecution.” Other districts have, however, suggested that rule 3.830, which outlines the procedural requirements for direct criminal contempt, does not itself require appointment of counsel. See Searcy v. State, 971 So.2d 1008, 1013-14 (Fla. 3d DCA 2008) (citing Williams v. State, 698 So.2d 1350 (Fla. 1st DCA 1997)). Thus, while recognizing that rule 3.830 contemplates that direct criminal contempt may be summarily punished, we observe that rule 3.830 contains no exception from the requirement in rule 3.111(b) that counsel be provided to indigent persons in prosecutions for offenses punishable by imprisonment. See Hayes v. State, 592 So.2d 327, 329 (Fla. 4th DCA 1992) (“There is no exception in rule 3.111(b)(1) for contempt prosecutions resulting in imprisonment of an indigent. ...”).
Additionally, rule 3.830 imposes procedural requirements that a trial court must follow in imposing a judgment for direct criminal contempt. See generally J.A.H. v. State, 20 So.3d 425, 427 (Fla. 1st DCA 2009) (articulating six steps that the trial court must follow pursuant to an adjudication of contempt). These include the requirement that “[t]he judgment of guilt of contempt shall include a recital of those facts on which the adjudication of guilt is based.” Fla. R. Crim. P. 3.830; see also J.A.H., 20 So.3d at 427 (requiring “a signed written order containing a recital of the facts upon which the adjudication of *1174 contempt is based”). Before adjudicating the defendant guilty, “the judge shall inform the defendant of the accusation against the defendant and inquire as to whether the defendant has any cause to show why he or she should not be adjudged guilty of contempt by the court and sentenced therefor.” Fla. R. Crim. P. 3.830.
We conclude that the trial judge here was required to determine whether Mr. Al-Hakim was indigent and therefore entitled to the appointment of counsel in this direct criminal contempt proceeding in which Mr. Al-Hakim, a member of the public, was taken into custody.[2] Additionally, after bringing Mr. Al-Hakim back before the court, the judge was required to give Mr. Al-Hakim an opportunity to respond before imposing a judgment of direct criminal contempt. Lastly, the written judgment which the court imposed did not contain a recital of the facts upon which it was based. Although our record on appeal is limited, we conclude that each of these errors warrants reversal.
Accordingly, we reverse the judgment of contempt and remand to the trial court for further proceedings consistent with our opinion. Because Mr. Al-Hakim’s sentence has now been reduced to time served, the trial court shall not interpret our opinion to require that Mr. Al-Hakim be brought back into custody and resen-tenced.
Reversed and remanded.
KHOUZAM and CRENSHAW, JJ., Concur.

. The record does not reflect how long this citizen was held, apparently in the court’s holding cell, until he was returned to the courtroom. It appears to have been several hours. While the court clearly has the power to hold a member of the public for a brief period to calm him or her down and to obtain an attorney to represent the citizen, we question the appropriateness of the delay that occurred in this case.

. We note that the trial court determined that Mr. Al-Hakim was indigent for purposes of this appeal.